1            IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF OREGON

3                     PORTLAND DIVISION

4
ERIK MATTSON,                    )
5                                )
                    Plaintiff,   )  Case No. 3:18-cv-00989-YY
6                                )
                v.               )
7                                )  January 29, 2019
QUICKEN LOANS, INC.,             )
8                                )
                    Defendant.   )  Portland, Oregon
9  _____)

10

11

12

13            TELEPHONIC DISCOVERY HEARING

14            TRANSCRIPT OF PROCEEDINGS

15       BEFORE THE HONORABLE YOULEE YIM YOU

16    UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

```
 1                          APPEARANCES

 2  FOR THE PLAINTIFF:
                         JARRETT L. ELLZEY
 3                       Hughes Ellzey LLP
                         2700 Post Oak Blvd
 4                       Suite 1120
                         Houston, TX 77056
 5
    FOR THE PLAINTIFF:
 6                       S. AMANDA MARSHALL
                         S. Amanda Marshall LLC
 7                       4545 SW Angel Avenue
                         #104
 8                       Beaverton, OR 97005

 9  FOR THE DEFENDANT:

10                       W. KYLE TAYMAN
                         Goodwin Procter LLP
11                       901 New York Avenue, N.W.
                         Washington, DC 20001
12
    FOR THE DEFENDANT:
13                       JAMES P. LAURICK
                         Kilmer Voorhees & Laurick, PC
14                       732 NW 19th Avenue
                         Portland, OR 97209
15

16

17  COURT REPORTER:      Jill L. Jessup, CSR, RMR, RDR, CRR
                         United States District Courthouse
18                       1000 SW Third Avenue, Room 301
                         Portland, OR 97204
19                       (503)326-8191

20

21                            *   *   *

22

23

24

25
```

TRANSCRIPT OF PROCEEDINGS

(January 29, 2019)

(Telephone conference:)

          THE COURT:  Good morning.  This is Judge You.  We're on the record in Mattson v. Quicken Loans.  It's Case No. 18-cv-00989.  Before we begin, let me make a couple of requests.  As I mentioned, we're on the record.  That means that we have a court reporter, and she's doing her very best to accurately record the proceedings.  So what that means is that everyone needs to speak loudly and clearly and, if possible, slow the pace down a little bit to make sure that everything is captured.  If you're on speakerphone, it makes things very difficult, so please switch to a handset.  And also please identify yourselves before speaking so that the court reporter can accurately record who is saying what.

   So, with that, let me ask if we have plaintiff's counsel on the phone.

          MS. MARSHALL:  This is Amanda Marshall for plaintiffs.

          MR. ELLZEY:  Good morning, Your Honor.  Jarrett Ellzey for plaintiff.

          THE COURT:  All right.  And how about for the defense?

                     (Simultaneous talking.)

          THE COURT:  I'm sorry.  That was Mr. Laurick?

1          MR. LAURICK:  Yes.  Local counsel for Quicken,

2   Your Honor.  Good morning.

3          THE COURT:  And who else is on the line for Quicken,

4   if anyone?

5          MR. TAYMAN:  This is Kyle Tayman for Quicken Loans,

6   Your Honor.  Good morning.

7          THE COURT:  Okay.  Anyone else?  Any other counsel on

8   the phone?

9      Okay.  So, again, it sounded like at least one person was

10  on speaker, possibly, so be sure to speak loudly and clearly.

11     And, of course, to the court reporter, feel free to

12  interrupt at any time if you cannot understand what someone is

13  saying.

14     We're on the phone today at Quicken Loans' request.  There

15  was an email that Mr. Laurick, I believe, had sent outlining a

16  matter with respect to a subpoena.

17     And in light of the fact, Mr. Laurick, it was your request

18  to meet with the Court today, do you want to outline what the

19  issue is?

20         MR. LAURICK:  Your Honor, I'm going to defer to

21  Mr. Tayman, who's more familiar with the issues, Your Honor.

22         THE COURT:  Okay.  Mr. Tayman, go ahead.

23         MR. TAYMAN:  Thank you, Your Honor.  This is

24  Kyle Tayman for Quicken Loans.  I'll just start with outlining

25  the issue.  And feel free to cut me off, Your Honor, if you

1   would like to ask any questions.  I appreciate that we have not

2   fully briefed this issue.  We are hopeful that we can resolve

3   it today with your assistance, but we will be glad to submit

4   further briefing on it if you would like.

5       In short, Your Honor, the matter here -- that's here isn't

6   about a subpoena.  It's actually about 23 subpoenas, by our

7   count.

8       It essentially boils down to this:  As you're aware,

9   Mr. Mattson has four separate lawsuits against four separate

10  defendants that have been severed after being initially filed

11  as one action.  And what has happened in the course of

12  discovery is that Mr. Mattson, and why we're here today, is

13  maintaining that he can use Rule 45 subpoenas issued in the

14  other cases, not against Quicken Loans, to obtain discovery

15  from third parties without disclosing those third parties to

16  us, without putting those third parties on initial disclosures,

17  without giving Quicken Loans notice of these -- Rule 45 notice

18  of these subpoenas.  And some of those subpoenas do violate the

19  Court's order, in our view, because they are not limited to

20  discovery only about Mr. Mattson.  And that so long as he later

21  produces whatever he obtains from these third parties to

22  Quicken Loans, then all of that is compliant with the federal

23  rules and that somehow this third-party discovery is effective

24  against Quicken Loans in this case.

25      When I say "later produced," in our review, some of these

1  docket -- some of these subpoenas we got notice of 70 days

2  after they were issued.

3      So that is the framing of the dispute and why we're here,

4  and I would be glad to talk about some of the more specifics if

5  Your Honor would like to hear it.

6      All right.  Thank you, Counsel.  Let me hear from the

7  plaintiffs.  I also would like to note that I received the

8  letter that Ms. Marshall sent to the court dated January 28th.

9          MS. MARSHALL:  Thank you, Your Honor.  This is

10  Amanda Marshall for the plaintiff, and I think our response is

11  largely laid out in the records, but I am trying to understand

12  the specific objection, which seems to me that when the

13  plaintiff is investigating the actions that we have pending

14  against separate plaintiffs that we need to inform each of the

15  plaintiffs of our investigation.

16      The problem here is that when the -- you know, we argued

17  from the beginning -- and I wasn't here, so I'm relying on the

18  record.  And, please, everybody correct me if I'm incorrect.

19  But my understanding of the record is, as stated by defense

20  counsel, this case was originally brought as a combined action,

21  and defendant then objected to the combined action, claiming

22  that each of these were completely separate and there was no

23  connection whatsoever.

24      Plaintiff had maintained from the beginning that it was

25  our theory of the case that the leads came from a single

1   robocall, a single AVATAR call.  So it was received by our

2   client.  And that call was the nexus of the generation of the

3   claim and the leads for each of the defendants.

4       Defendants denied that emphatically, and that was, as I

5   understand it, the basis for the argument of severance, which

6   we objected to.

7       Nevertheless, the cases were severed, and we proceeded

8   against each person individually.  Of course we had -- we

9   didn't have the evidence.  It was our belief that the claims

10  were connected, but we didn't -- we were seeking evidence

11  during discovery and through those subpoenas.  It's our

12  contention that we can subpoena anybody and any corporation and

13  any documents that we believe are relevant to the proceedings

14  that are initiated by plaintiff.

15      In the course of our collecting documents through the

16  process of subpoena under Rule 45, we actually obtained

17  confirmation that the theory that we had of the case is, in

18  fact, accurate.  All of the claims were generated by a single

19  AVATAR.  The clients -- I'm sorry, the defendants have all --

20  had the same nexus of all of these leads.

21      But the problem is that the times that we issued the

22  subpoenas Quicken Loans had been nonresponsive to our request

23  about the leads.  The only thing that they had said -- the only

24  thing that they had identified in the initial disclosure was

25  that they got their leads from, quote, QuinStreet, and that was

1   the extent of their disclosure.

2       So our client was on his own trying to discover the source

3   of these leads by sending out subpoenas to various sources.

4   And because the defendants had insisted that the cases be

5   severed and that the discovery be separated, that is how we

6   proceeded.  Given the fact that the cases are related and the

7   leads all came from the same place and we've discovered the

8   nexus of the Quicken Loans leads, not from Quicken Loans being

9   responsive to our request but from our independent

10  investigations and subpoenas sent out searching for Quicken

11  Loans leads that have gone to third parties, as was stated by

12  the defendants, we now know what happened, and they are

13  connected.  And I can understand why defense counsel is

14  concerned that they didn't get that information in advance, but

15  I would just suggest to the Court that that was a result of

16  their own insistence that the cases be severed.

17      At this point what we proposed to Quicken Loans and our

18  consultation with them leading up to their request for this

19  hearing was if they would like to consolidate discovery, we

20  were -- are more than happy to comply with that.  That would be

21  our suggestion.

22      At this point, they have received all of the information

23  that has been produced through the subpoena process.  We are

24  happy to keep all of the parties in the loop.  We are happy to

25  serve every party copies of all subpoenas that are served on

1  any of the remaining defendants in the case moving forward.  We

2  have nothing to hide.  (Indiscernible.)  We're pleased to

3  proceed in whatever way the Court sees fit, but we -- we're

4  certainly wanting to give all of this information to Quicken.

5      In terms of whether or not we can use information that is

6  sought from third parties in the subpoena process, and what

7  our -- what our obligations are, in terms of disclosure, when

8  it comes to trial, I feel like the defense is conflating the

9  issue of pretrial discovery and admissibility at trial.

10     We can -- I mean, my understanding, and, you know, 30

11 years of being a trial lawyer in state and federal court in

12 Oregon is if I find a document on the street or get it from my

13 neighbor and it has to do with Quicken Loans, I can use it

14 against them as long as it's produced in a timely manner,

15 authenticated at trial, and admissible under the Federal Rules

16 of Evidence.  I'm a little confused about the conflation of the

17 issues of admissibility and relevance for use against

18 Quicken Loans and sources of documents.

19     Again, I've offered counsel the option of being copied

20 contemporaneously on every subpoena that's issued so that if

21 they feel they have some kind of issue or privacy or privilege

22 about a document or a witness being sought from a third party,

23 they have the opportunity to file a motion to quash.  And that

24 would seem to address the -- I guess I would just describe them

25 as the fairness issues that they're raising, in terms of, you

1  know, this idea that they're being blindsided by our

2  investigation.

3      But, again, we're happy to have discovery consolidated to

4  be another solution, which we, of course, offered to counsel

5  during our conferral.

6          THE COURT:  All right.  I have a few questions.  One

7  question has to do with the paragraph on page 2 of

8  Ms. Marshall's letter where it says that it's clear -- now

9  clear that the lead was created within a minute of the AVATAR

10 call on September 1, 2017.  So I don't have the benefit of all

11 of the information that the parties now have.  Also, on -- I'm

12 sorry.  That was on page 3.

13     On page 2 it says defendants have conceded that they all

14 obtained the lead for Mattson from the same source at the exact

15 time -- same time Mattson received the AVATAR phone call.

16     So could somebody describe what the discovery -- what the

17 discovery has produced in that regard?

18          MS. MARSHALL:  Your Honor --

19          UNIDENTIFIED SPEAKER:  Your Honor --

20          THE COURT:  Hold on.  Hold on.  Why don't we start

21 with Ms. Marshall, and then if you want -- if the defense would

22 like to fill in some details, then I'll hear from them as well.

23          MS. MARSHALL:  If I may, Your Honor, I'll defer this

24 to Mr. Ellzey because he has more specific knowledge about

25 the -- what the discovery documents say.

1           THE COURT:  Okay.  So, Mr. Ellzey, go ahead.

2           MR. ELLZEY:  I'm happy to do that, Your Honor.

3       What we discovered over the course of discovery in the

4   four actions is that the defendants all obtained the lead from

5   a broker named QuinStreet.

6       QuinStreet, we believe, obtained the original lead source

7   of information from an operation out of Florida named Save Big

8   Leads.  Save Big Leads purports to operate minutemortgage.com,

9   which Mr. Mattson's wife supposedly logged onto and entered her

10  information through.

11      The discovery that we have obtained appears that this lead

12  information is really inaccurate.  It's not her actual email

13  address.  The IP address is incorrect.  And the AVATAR call

14  came to Mr. Mattson's phone apparently the same time that -- or

15  one minute after Ms. Mattson was allegedly entering her

16  information into this minutemortgage.com website.

17      So our theory is that the AVATAR itself actually -- they

18  have the contact information some other way, through some other

19  method.  It didn't actually come through the Minute Mortgage

20  website.  The AVATAR call was triggered at the same time the

21  lead forwarded to the QuinStreet entity.

22          THE COURT:  All right.  Thank you.

23      And can you explain again -- can you remind me again what

24  your theory is with respect to each of the defendants?

25          MR. ELLZEY:  Well, the theory is that --

1    THE COURT:  Actually, Mr. Ellzey, I'm sorry.  Just

2  with respect to Quicken Loans.

3    MR. ELLZEY:  Well, we believe Quicken Loans -- and I

4  believe the evidence at this point shows Quicken Loans

5  contracted with QuinStreet.  QuinStreet is a lead broker, and

6  QuinStreet gets the leads that it sells from a number of

7  sources.  We believe the Mattson lead came to QuinStreet via

8  this Save Big Leads operation in Florida, which operates this

9  minutemortgage.com website allegedly.

10    So everything is being funneled through this QuinStreet

11  organization, if you will.

12    THE COURT:  Okay.  And then, remind me, other calls

13  were -- were made from -- allegedly made from Quicken to -- to

14  the Mattsons?

15    MR. ELLZEY:  Correct, Your Honor.

16    THE COURT:  Okay.  It's been some time since I've

17  reviewed the facts here.  Okay.  So the -- just bear with me.

18  The theory is that the defendants obtained the lead from

19  QuinStreet Street, and then thereafter contacted the Mattsons;

20  is that correct?

21    MR. ELLZEY:  Yes, Your Honor.

22    MS. MARSHALL:  Yes.

23    THE COURT:  All right.  Just one moment.

24    The other question I have is -- and this is for

25  plaintiff -- why -- who -- when these 20-some-odd subpoenas

1  were issued, who was notified pursuant to FRCP 45(4)?  Which
2  defendants were notified?
3          MR. ELLZEY:  The defendants in the actions from which
4  the -- I'm sorry.  This is Jarrett Ellzey.  The defendants from
5  which the actions -- the subpoenas were issued.
6          THE COURT:  Specifically, who would that be?
7          MR. ELLZEY:  Okay.  So if -- if we wanted to
8  investigate an entity under the New Penn action, for example,
9  pursuant to Rule 45, plaintiffs would have notified New Penn,
10 since they are the defendant and opposing party.
11     Now, what Quicken is saying is that we should have
12 notified them too, but -- even though they're not a defendant
13 in the New Penn case.
14     That was our practice up until Quicken and New Penn
15 expressed concern.  We had the phone call and exchange of
16 emails, and I actually personally assured New Penn counsel -- I
17 believe I may have also done the same with Mr. Tayman.  If I'm
18 incorrect, then somebody, I believe, on my team did, that we --
19 we would, from that point forward, copy all defendants whenever
20 a subpoena went out.  That means in all of the related actions.
21         THE COURT:  And so when these 23 subpoenas went out,
22 was New Penn the only defendant who was notified of those
23 subpoenas?
24         MR. ELLZEY:  No, Your Honor.  There were subpoenas
25 originated in the Vision Quest action and United Mortgage and,

1    I believe, Quicken also.   In other words --

2                THE COURT:   I'm sorry.   Go ahead.

3                MR. ELLZEY:   I'm sorry.

4                THE COURT:   No, go ahead.

5                MR. ELLZEY:   The subpoenas originated in all four of

6    the actions.

7                THE COURT:   And who were the 23 subpoenas directed

8    to?   You don't have to list all of the entities, but just give

9    me some idea.

10               MR. ELLZEY:   Thank you.   I wouldn't have been able to

11   do that.   But they are -- they are mainly entities related to

12   the website hosting and -- and entities that may have obtained

13   information from the -- from the website hosting and data lead

14   generation from the Save Big Leads entity.

15               THE COURT:   All right.   Let me ask -- I want to give

16   an opportunity for the defense to address any of those things

17   that the plaintiffs have just represented.

18               MR. TAYMAN:   Thank you, Your Honor.   Kyle Tayman

19   again for Quicken Loans.

20       I do want to address several things.   I think there were

21   several inaccuracies and falsities said there, and I understand

22   the sum of it is there's a lot of things going on in --

23               THE COURT REPORTER:   I'm sorry.   You're cutting out.

24               DEPUTY COURTROOM CLERK:   Your Honor?

25               THE COURT:   Mr. Tayman, you're cutting in and out a

1    little bit.

2              DEPUTY COURTROOM CLERK:  Thank you.

3              MR. TAYMAN:  Sure.  Is that better?  It sounds like

4    if someone could mute their background, that might resolve the

5    issue.

6              THE COURT:  Okay.  Go ahead.

7              MR. TAYMAN:  I did receive Ms. Marshall's letter from

8    my colleague this morning.  I was not copied on it last night.

9    I do think what she said is not factually correct -- that

10   Quicken Loans did not disclose the source of the leads.  We

11   100 percent complied with our disclosure obligations pursuant

12   to the Court's scheduling order, and we answered all the

13   discovery that was asked of us.  We disclosed that the lead, to

14   our knowledge, came from QuinStreet, because that's what we

15   knew.  We later disclosed, once we did further factual

16   investigation and there was third-party discovery from

17   QuinStreet, that we understood it came through this website

18   Minute Mortgage group.  So that is not in any way an excuse for

19   not getting us notice of these subpoenas.

20        The fundamental issue here is if the documents came from

21   these subpoenas and the subpoenas themselves are not being

22   issued in our lawsuit.  So even after we have raised this

23   issue, there's been, I believe, six or seven new subpoenas

24   issued.  Some of these concern Quicken Loans.  Some of the

25   subpoenas, even the past subpoenas, they said that they didn't

1  copy us or they didn't issue in our case because we didn't

2  disclose (indiscernible).  Subpoenas specifically asked for

3  documents about Quicken Loans.

4      So they're clearly issuing subpoenas in other cases

5  against third parties to get documents about my client which

6  can have no legitimate basis for the lawsuit against New Penn

7  or Vision Quest.

8      So Ms. Marshall said now that we're getting copied on

9  these subpoenas, that's all that they're doing.  They're

10  issuing subpoenas in Vision Quest.  For example, about

11  two weeks ago they issued five subpoenas, including to third

12  parties that are known business partners of Quicken Loans,

13  asking for documents that greatly exceed the scope of

14  Mr. Mattson's claims that are not limited to the time period in

15  question for Mr. Mattson and can go beyond his issues into

16  class certifications issues and for which they had not

17  disclosed how they're at all relevant to the case for

18  Mr. Mattson at Quicken Loans.  And they're saying because we're

19  copied on it we somehow have sufficient notice.

20      Now Ms. Marshall said I can move to quash it.  That's not

21  true.  I can't move to quash a subpoena not in my case.  If I

22  brought that to you, Your Honor, you would have no authority to

23  quash a subpoena that I'm bringing to your attention that I

24  received notice of if it was not issued in my case.  That gets

25  to the fundamental problem here.

1      You know, we've received only -- notice of only nine of

2  the 23 subpoenas, and only one of the 23 that actually have

3  been issued in our case.  So we're fundamentally handcuffed

4  from being able to do anything.

5      You know, Mr. Ellzey mentioned these subpoenas have been

6  issued in other cases.  In some instances, they've issued --

7  they subpoenaed the same third party in multiple cases,

8  including from QuinStreet.  So they're clearly capable of

9  issuing multiple subpoenas to -- in order to provide the

10  Rule 45 required notice so that we would have the opportunity

11  to then object and move to quash, if we were given that chance,

12  but they haven't been doing that.

13      Instead, you know, there are subpoenas here that we're

14  getting 78 days after it's issued, 64 days after it's issued,

15  53 days after it's issued.

16      Save Big Leads, for example, we got notice of it 64 days

17  after that subpoena was issued in the United Mortgage case.  It

18  was not issued in our case.

19      Plaintiff disclosed Save Big Leads as potentially relevant

20  to their claims in this lawsuit.  It makes no sense why -- if

21  they're being discovered from that entity that they're going to

22  then turn around and say it's applicable in their case against

23  Quicken Loans, why we wouldn't have Rule 45 notice of that and

24  the opportunity to object.

25      If anything, it seems like this was constructed to limit

1   Quicken Loans' participation, because, again, it's the only

2   defendant that has gotten one subpoena.   Every other defendant

3   has gotten notice of multiple subpoenas or issued multiple

4   subpoenas in their cases.

5       Now, Your Honor, there's a few other things that I do want

6   to address.   As to the AVATAR, I do understand that's the

7   plaintiff's theory.   We haven't seen a connection to that, but,

8   you know, it gets back to the whole point why we severed.   I do

9   want to make sure to remind the Court, because, again, I think

10  this wasn't quite right from Ms. Marshall's letter.   You know,

11  at the May 18th hearing on that issue the plaintiff conceded

12  that severance was an appropriate course of conduct because, at

13  the end of the day, their claims are about calls.

14      So whatever the source of how everyone got their number,

15  Mr. Mattson's claim concerning the calls and of course the

16  calls my client made and what was said during those calls is

17  not relevant to the calls that New Penn made to Mr. Mattson.

18      I think also, Your Honor, just to be helpful to identify

19  some of the explicit examples of other things that are going on

20  here, the most five recent subpoenas that I mentioned, those

21  were issued in the Vision Quest case.   We have been told for

22  the past two or three weeks that plaintiff has reached a

23  settlement with Vision Quest.

24      Now, I understand the settlement is apparently not

25  finalized, but that also just highlights our concern that we

1    are being copied on subpoenas in other cases for which they're

2    seeking discovery from Quicken Loans' business partners, like

3    LendingTree, that they're telling us that they're going to use

4    in our case, and they're issuing in a case where the defendant

5    apparently has a settlement agreement, in principle, and has no

6    incentive to police those subpoenas.  And because they're not

7    issued in our case, I have no standing to move to quash them on

8    behalf of my client.

9         So we're kind of at a loss about what to do.

10        As Mr. Ellzey said, we -- we've had conferences.  We wrote

11   letters.  We had local counsel -- pursuant to Your Honor's last

12   advisement, we had local counsel try to resolve it, and we have

13   gotten no assurances that they're going to start complying with

14   the rules.  If anything, all they've done is started to cc us

15   on the subpoenas going out in the other cases, which doesn't

16   give us adequate Rule 45 notice and doesn't make them

17   applicable in the case against Quicken Loans.

18        So we're kind of at a loss.  And our position is that, you

19   know, this is not complying with Rule 45.  The scope of

20   subpoenas are not complying with the Court's scheduling order.

21   They still have not -- despite issuing these 23 subpoenas to 16

22   different entities and saying that they're applicable in the

23   case against us, they still have not obtained additional

24   disclosures to identify these parties to us.  For instance,

25   when I look at this laundry list of third parties, only two of

1    them were on the disclosures.  So the -- and I only learned

2    through telephone conferences why they subpoenaed a couple

3    others.  Most of them, I have no idea what -- why they're

4    subpoenaing those entities, how that discovery is supposed to

5    be relevant in our case, and what my client should be doing to

6    investigate or to try to participate in the conferences of

7    these third parties so we know that discovery being obtained

8    complies with this Court's order and is relevant.  We're just

9    being denied our due process in all sense of the word.

10          THE COURT:  All right, Counsel.  Thank you.

11       So I've heard from both sides, and I -- after receiving

12    the letter this morning that Ms. Marshall sent, I had a chance

13    to do a little bit of research.

14       I'll just say I'm -- I'm a bit troubled by what I'm

15    hearing.  Let me preface that by saying that I haven't heard

16    anything today that leads me to conclude that the decision to

17    sever these cases was in any way a mistake or inappropriate

18    under the circumstances.  So that's the situation that we're in

19    right now.

20       I'm also -- I guess, when I say "troubled," I'm just

21    perplexed as to why subpoenas are being issued.  But pursuant

22    to Rule 45(4), notice hasn't been provided to Quicken Loans,

23    although the subject of the subpoenas appears to be related to

24    this lawsuit against Quicken Loans and to material related to

25    Quicken Loans.

1        The research that I've done makes it very clear that under

2   Rule 45(4) proof of service has to be made on the other party.

3   And the purpose of the rule, which is set forth in the

4   committee note to the 1991 amendments, says that the

5   requirement of prior notice is to afford other parties an

6   opportunity to object to the production or inspection, and

7   that's just simply not what's being afforded to the defendant

8   in this case.

9        There's other language that I found in cases involving

10  this particular issue:  The lack of notice on the opposing

11  party.  For example, the Court has said that the risks attached

12  to the misuse of the subpoena power are great.  It compromises

13  the integrity of the Court's processes.

14       So this is clearly an issue that the Court -- courts

15  across the country have taken very seriously.

16       Now, on one final note, to adopt the plaintiff's position

17  on this -- on this issue would really be an end run around

18  Rule 45(4).  It would totally circumvent the purpose of the

19  rule, and that's just not something that I can -- I can allow.

20       So, basically, my reading of the rule, as applied to this

21  case, is that Quicken Loans has to be served, pursuant to

22  Rule 45(4), with the subpoena to nonparties.  So that's

23  essentially my ruling.

24       What's the next step?

25       Well, let me ask is there anything further that you need

1    from the Court today?

2            MR. ELLZEY:  Your Honor, this is Jarrett Ellzey.

3    Just to clarify, we -- we have been copying the nonparty

4    entities or defendants since they raised the issue.  That --

5    that's been our agreement.  Our reading of Rule 45 initially

6    was that we were only required to copy the defendants in the

7    action from which the subpoenas were issued.  And --

8            THE COURT:  Let me just stop you there.  If you are

9    intending -- if you're subpoenaing information that you intend

10   to use in the lawsuit -- if you're subpoenaing information in

11   the New Penn lawsuit, but really you intend to use it against

12   Quicken Loans or you're seeking information that you may very

13   well use in the other lawsuits, you have to provide notice

14   under (4).  You have to serve it, provide notice and a copy of

15   the subpoena on each party.  That means Quicken Loans.

16       There's just no way around it.  Irrespective of whether

17   you have come to some kind of agreement with them since then,

18   what they're asking for right now is adherence to Rule 45(4).

19           MR. ELLZEY:  Understood, Your Honor.

20           THE COURT:  I mean, later, you're going to be in the

21   situation where you haven't complied with 45(4) and -- and the

22   Court very -- they may very well exclude that information

23   because Quicken Loans wasn't provided with notice, wasn't

24   served with a copy.  That's kind of a -- that's kind of a risky

25   game to play.

1          MR. ELLZEY:  I do understand your position,

2     Your Honor.  I mean, it -- this was really borne out of the

3     interest of efficiency.  I mean, we -- to -- these parties

4     would have had to issue four subpoenas apiece.  It just -- our

5     belief was that as long as we timely produced the documents

6     received, then we were complying with the rule.  And any

7     nonparty wouldn't be prejudiced by our use of the documents

8     with timely production -- long before we even take a deposition

9     in this case.  That was our position.  I understand the Court's

10    ruling, and we intend to abide by it.

11          THE COURT:  I appreciate that.

12       I just want to, again, emphasize that the purpose of the

13    rule is to afford other parties an opportunity to object to the

14    production or inspection.  And if that notice is not provided,

15    if the subpoena is not served, then that opportunity is

16    forgone.  Irrespective of whether they can object later, that

17    opportunity is forgone.  So that's where the -- that's where

18    the problem lies.  All right?

19          MR. ELLZEY:  Understood, Your Honor.

20          THE COURT:  Okay.  So what, if anything else, do we

21    have to discuss today?

22          MR. TAYMAN:  Your Honor, this is Kyle Tayman for

23    Quicken Loans.  I just want to say this to make sure the record

24    is clear in response to what Mr. Ellzey said.  Quicken Loans

25    has not agreed to accept a copy or notice of subpoenas issued

1    in other cases.  We've maintained that it has -- the subpoenas

2    in our case have to be issued in our case, and we have to get a

3    Rule 45 notice.  Going forward, as a result of this issue, we

4    maintain that our position is that they don't cure these

5    problems, then we don't think any of that discovery can be used

6    in a case against us.

7          You know, I'm happy to meet with plaintiff's counsel and

8    hear them out on any potential solutions they may have or

9    efficiencies.

10         We have been complying with entertaining discussions of

11   that in the past.  Happy to do so further.  And if something

12   can't be worked out, then I would propose the parties to come

13   back to the Court and try to see if we can't figure something

14   out.  But I would be hopeful we could resolve it.

15             THE COURT:  Well, let me say one thing as a point of

16   clarification.  I mentioned use of these materials at trial.

17   That is a -- I think a premature issue for the Court to

18   resolve.  One, I'm not the trial judge.  So that's a matter

19   that I'm not going to make any kind of a ruling about.  That is

20   completely within the scope of the authority of the judge who

21   tries the case.

22         There are many, many other factual issues that may come

23   into play in making that type of decision, so I -- basically, I

24   don't want to touch that right now, but I am just pointing it

25   out because it shows the type of risk that is involved in not

1   complying with the rule.  Okay?

2              MR. ELLZEY:  Understood, Your Honor.

3              THE COURT:  Okay.  So anything further for today?

4              MR. ELLZEY:  Nothing from the plaintiff.

5              MR. TAYMAN:  Nothing further from us, Your Honor.

6              THE COURT:  All right.  And you did mention -- I

7    mean, if there's some matter that you need to return to the

8    Court about, well, then, by all means, feel free to do so, and

9    as you can see, we can schedule you quickly and conveniently.

10   You don't have to provide a lot of information in advance in

11   order for us to get this resolved.

12      And, of course, if I needed more information, I could

13   always ask for that at the time.

14      All right, then.  Okay.  Well, thank you very much.

15              MR. ELLZEY:  Thank you, Your Honor.

16              MS. MARSHALL:  Thank you, Your Honor.

17              MR. TAYMAN:  Thank you, Your Honor.

18              MR. LAURICK:  Thank you.

19                        (Hearing concluded.)

20

21

22

23

24

25

C E R T I F I C A T E

Erik Mattson v. Quicken Loans, Inc.

3:18-cv-00989-YY

TELEPHONIC DISCOVERY HEARING

January 29, 2019

     I certify, by signing below, that the foregoing is a true and correct transcript, to the best of my ability, of the telephonic oral argument heard via conference call, taken by stenographic means.  Due to the telephonic connection, parties appearing via speakerphone or cell phone, speakers overlapping when speaking, speakers not identifying themselves before they speak, fast speakers, the speaker's failure to enunciate, and/or other technical difficulties that occur during telephonic proceedings, this certification is limited by the above-mentioned reasons and any technological difficulties of such proceedings occurring over the speakerphone at the United States District Court of Oregon in the above-entitled cause. A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
_____
Official Court Reporter         Signature Date: 1/31/19
Oregon CSR No. 98-0346          CSR Expiration Date:  9/30/20